# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LARRY BUSBY**                                                                 **PLAINTIFF**

**v.**                                    **Case No. 2:25-cv-00105-LPR**

**UNITED PARCEL SERVICE, INC.;**
**WILLIE ISOM; RODNEY RUFF;**
**JEREMIAH PHILLIPS; FERT KEITH;**
**LARRY BRUCE SMITH; BRIAN**
**BEASLEY; ADRIAN HILL; and JOHN**
**DOES 1-5**                                                                   **DEFENDANTS**

## ORDER

This Order addresses Plaintiff's request to remand this case to state court.[1]  For the reasons below, the Court DENIES this request for now.

The big issue here is whether Plaintiff fraudulently joined the following Arkansas citizens as Defendants in this lawsuit: Mr. Brian Beasley, Mr. Jeremiah Phillips, Mr. Larry Bruce Smith, and Mr. Fert Keith.  If these Defendants have all been fraudulently joined to this lawsuit, then the Court has diversity jurisdiction over the action.[2]  But if any of these defendants are properly joined to this lawsuit, then the Court lacks diversity jurisdiction over the case.[3]  In such a situation, the case would have to be remanded.[4]

---

[1] Plaintiff filed two Motions to Remand.  *See* Pl.'s Mot. to Remand (Doc. 7); Pl.'s Second Mot. to Remand (Doc. 16). Although this is highly unusual, and the Court would be well within its discretion to strike the second Motion, the Court will consider the content of both Motions fully.  That is because the content of the second Motion doesn't materially affect the Court's analysis.

[2] *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003) ("When . . . the respondent has joined a non-diverse party as a defendant in its state case, the petitioner may avoid remand—in the absence of a substantial-federal question—only by demonstrating that the non-diverse party was fraudulently joined.").  Plaintiff is a citizen of Arkansas, the remaining Defendants are citizens of states other than Arkansas, and the amount in controversy is over $75,000.  *See* Notice of Removal by Def. United Parcel Service, Inc. (Doc. 1) at 1–3; Compl. (Doc. 2) at 1–2.

[3] *See M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109 (8th Cir. 2023) (noting that removal to federal court is only permissible if there is "complete diversity and over $75,000 in controversy").

[4] *See Filla*, 336 F.3d at 809.  There are no federal questions presented by the Complaint.  *See* Compl. (Doc. 2) at 4–6.

A defendant is considered to have been fraudulently joined to a lawsuit when there is no reasonable basis in fact and law for the claim or claims a plaintiff alleges against that defendant.[5] As the Eighth Circuit explained in *Filla*, stating the rule is far easier than applying it.[6]  But, in a nutshell, the general idea is that there has been fraudulent joinder if: (1) accepting a complaint's fact allegations and making all reasonable inferences therefrom in favor of plaintiff, it is *clear* that the alleged state-law cause of action could not *possibly* apply to the named defendant; or (2) there is indisputable evidence that the material allegations in the Complaint are false.[7]  The Court proceeds to apply this test to each Defendant that is a citizen of Arkansas.

### 1. Mr. Beasley

Mr. Beasley is fraudulently joined because there are no claims stated against him that have a reasonable basis in fact and law.  The Complaint sets out six causes of action.[8]  Count I is stated against UPS, Mr. Larry Bruce Smith, Mr. Willie Isom, and Mr. Adrian Hill.[9]  Count III is stated

---

[5] *See Filla*, 336 F.3d at 810.  Even where there is a reasonable basis in fact and law for one or more claims, a defendant may be considered fraudulently joined if a plaintiff has "no real intention in good faith to prosecute the action against [that particular] defendant or seek a joint judgment." *Williams v. Motel 6 Multipurpose, Inc.*, 120 F. Supp. 2d 776, 779 (E.D. Ark. 1998) (internal quotations omitted).  In our case, although Defendants raise this part of the fraudulent joinder analysis in passing, the Court is not persuaded that it applies to Plaintiff's claims.  It would be nothing more than speculation to conclude that Plaintiff has no real intention to prosecute the action against the Defendants that are Arkansas citizens.  These Defendants have all either been served or waived service.  *See* Docs. 9, 22, 23, 24, 25, 26.

[6] *See Filla*, 336 F.3d at 809 ("While fraudulent joinder—the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal—is rather easily defined, it is much more difficulty applied.").

[7] *See id.* at 810; *Johnson v. Midwest Div. - RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023) ("Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." (internal quotations omitted)); *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015) ("A party has been fraudulently joined when there exists no reasonable basis in fact and law to support a claim against it." (internal quotations omitted)).

[8] *See* Compl. (Doc. 2) at 4–6.

[9] *See id.* ¶ 24.

against UPS only.[10]  Counts IV and V are stated against Mr. Fert Keith and John Does 1-5.[11]  Count VI is stated against Mr. Willie Isom and Mr. Rodney Ruff.[12]

That leaves Count II, which is an AMWA retaliation claim.[13]  This claim is stated against all Defendants.[14]  But there are no facts alleged in the Complaint that would give the slightest suggestion that Mr. Beasley committed or contributed to any act of retaliation against Plaintiff. Paragraph 16 of the Complaint, which is the only reference to any actual act by Mr. Beasley, does not even hint at retaliation.[15]  Moreover, as Judge Miller explained in *Stith*, in order for an individual to be liable under the AMWA, that individual must be "acting directly or indirectly in the interests of [his] employer in relation to the employee."[16]  With respect to Mr. Beasley, the relevant allegations in the Complaint allege only that he is a security officer affiliated with UPS.[17] Unlike the allegations against certain other Defendants,[18] the Complaint does not suggest in any way that Mr. Beasley controls Plaintiff's hours, pay, or work.  Accordingly, it is absolutely clear that Mr. Beasley cannot be liable under the AMWA in this case.[19]

---

[10] *See id.* ¶ 30.

[11] *See id.* ¶¶ 33, 36.

[12] *See id.* ¶ 41.

[13] *See id.* at 4.

[14] *See id.* ¶ 27.

[15] *See id.* ¶ 16 ("On August 20, 2024, Defendant, Brian Beasley, a Security Officer at UPS, interviewed several employees, all of whom denied the allegations against Plaintiff.").

[16] *Stith v. Dollar Gen. Corp.*, No. 5:13CV00373 BSM, 2014 WL 929711, at *1 (E.D. Ark. Mar. 10, 2014).

[17] *See* Compl. (Doc. 2) ¶ 16.

[18] *See id.* ¶ 13 (alleging managerial control over Plaintiff by Mr. Smith and Mr. Isom).

[19] The AMWA sets out certain pay and wage requirements that the vast majority of Arkansas employers must follow. *See, e.g.*, Ark. Code § 11-4-211(a) ("[N]o employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed.").  The meaning of the term "employer" requires more attention.  The AMWA defines an employer as "any individual, partnership, association, corporation, business trust, the State of Arkansas, any political subdivision of the state, or *any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee*." Ark. Code § 11-4-203(4)(A) (emphasis added).  The Arkansas Supreme Court has yet to definitively rule on how to determine who qualifies as an employer for purposes of the AMWA.  But the Court is not totally without

guidance. The Fair Labor Standards Act's (FLSA) definition of employer closely aligns with the AMWA's definition of that same term. *See* 29 U.S.C. § 203(d) ("'Employer' includes *any person acting directly or indirectly in the interests of an employer in relation to an employee* and includes a public agency, but does not include any labor organizations (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." (emphasis added)). The similarity in these definitions is unsurprising because, in many ways, the FLSA is the federal counterpart to the AMWA. *See Arkansas Dep't of Veterans Affs. v. Okeke*, 2015 Ark. 275, at 6, 466 S.W.3d 399, 403 (2015) ("Like the AMWA, the FLSA generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of forty hours in a given week. The AMWA appears to impose the same overtime requirements as the FLSA." (internal citations omitted)); *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985 (W.D. Ark. 2016) ("The FLSA and the AMWA impose similar minimum wage and overtime requirement on employers . . . ." (internal quotations omitted)).

Because the FLSA and the AMWA contain so many similarities (both in form and in substance)—and because the Arkansas Supreme Court has yet to definitively interpret some of the AMWA's provisions—the Eighth Circuit has concluded that the Acts' parallel provisions should be interpreted and analyzed in the same manner. *See Karlson v. Action Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1092 n.3 (8th Cir. 2017) ("The definition of employee in the AMWA tracks the FLSA[,] . . . . [and] [t]he Arkansas Administrative Code provides that the [Arkansas] Department of Labor 'may rely on . . . federal precedent established under the [FLSA] in interpreting and applying the provisions of [the AMWA] . . . except to the extent a different interpretation is clearly required.'" (quoting Ark. Code R. § 010.14.112)); *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042 n.1 (8th Cir 2020) (stating that the Eighth Circuit's FLSA exemption analysis applies to Plaintiff's AMWA claims); *Okeke,* 2015 Ark. 275, at 6, 466 S.W.3d at 403 (listing several parallel provisions in the AMWA and the FLSA and noting that the Arkansas Department of Labor may rely on federal precedent when interpreting and applying provisions of the AMWA); *Estes v. Buell*, No. 4:18-CV-00026-KGB, 2019 WL 1338396, at *6 (E.D. Ark. Mar. 25, 2019) ("The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." (internal quotations omitted)); *Carter v. Primary Home Care of Hot Springs, Inc.*, No. 6:14-CV-6092, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015); *Cummings*, 218 F. Supp. 3d at 985–86.

In light of the above, the Court is certain that the Arkansas Supreme Court would rely on federal FLSA precedent to determine who qualifies as an employer (and a person acting in the interest of an employer) under the AMWA. Like the Eighth Circuit, the Arkansas Supreme Court would look to facts that describe the "economic reality" of an alleged employer-employee relationship. *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) ("[T]he test of employment under the FLSA is one of 'economic reality.'" (internal quotations omitted)); *see also Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961) (noting that the "'economic reality' rather than 'technical concepts' is . . . the test of employment"). In determining this "economic reality," the Eighth Circuit has primarily considered—and the Arkansas Supreme Court would primarily consider—whether the alleged employer or individual acting in the interest of the employer: (1) has the "right to control the nature and quality of [the employee's] work"; (2) has the "right to hire or fire" the employee; or (3) serves as "the source of compensation for [the employee's] work." *Ash*, 799 F.3d at 961. This is the test that the Arkansas Supreme Court would clearly employ even where the pertinent question is whether an employee's individual supervisors (or coworkers) count as that employee's employer for purposes of the AMWA. *See Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (noting the similarities between the FLSA's and FMLA's definition for "employer" and holding that it "[i]f an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity."); *Wirtz v. Pure Ice. Co.*, 322 F.2d 259, 262–63 (8th Cir. 1963) (holding that an individual corporate officer who enjoys "a combination of stock ownership, management, direction[,] and the right to hire and fire employees" qualifies as an employer under the FLSA); *Yasevich v. Heritage Co., Inc.*, No. 3:20-CV-00019 KGB, 2023 WL 5670774, at *14 (E.D. Ark. Sept. 1, 2023) ("In determining whether an individual qualifies as an employer [under the FLSA], . . . . [c]ourts within the Eighth Circuit consider the totality of the circumstances. The analysis typically starts with a review of four factors: (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled the plaintiffs' work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained the plaintiffs' employment records." (internal citations omitted)); *Williams v. Insomnia Cookies, LLC*, 715 F. Supp. 3d 1205, 1216 (E.D. Mo. 2024) ("An individual may be held liable under the FLSA." (citing *Darby*, 287 F.3d at 681)); *Karnes v. Happy Trails RV Park, LLC*, 361 F. Supp. 3d 921, 928 (W.D. Mo. 2019) ("The FLSA enables claims against individual supervisors as well as corporate employers. . . . In addition, the FLSA contemplates situations where an employee has

4

For both reasons set out above, Mr. Beasley has been fraudulently joined to this lawsuit. He is dismissed and not considered for purposes of the diversity jurisdiction analysis.

### 2. Mr. Phillips

Like Mr. Beasley, Mr. Phillips is fraudulently joined because there are no claims stated against him that have a reasonable basis in fact and law.[20]  The Court has already identified the Complaint's six causes of action above.[21]  Five of those causes of action name particular Defendants.  Mr. Phillips is not named in any of those five causes of action.[22]  But Count II—the AMWA retaliation claim that is stated against all Defendants—is different and requires more analysis.  The Complaint does allege that, "[s]hortly after filing the grievance, Plaintiff was falsely accused of using racial slurs and making threats against coworkers by Phillips."[23]  And given the very low standard of "reasonable basis in fact and law," that is probably enough in terms of suggesting a retaliatory act.[24]  But there is still a problem for Plaintiff.

The Court has already explained that, in order for an individual to be liable under the AMWA, that individual must be acting directly or indirectly in the interests of his employer in relation to the employee.[25]  With respect to Mr. Phillips, the relevant allegations in the Complaint

---

several simultaneous employers, each responsible for compliance with the FLSA."). *See also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (holding that both the partners of a real estate management company and the owners of a building were employers under FLSA because they enjoyed "managerial responsibilities . . . which gave [them] substantial control of the terms and conditions of the work" of the relevant employees).

[20] *See Filla*, 336 F.3d at 810.

[21] *See supra* pp. 2–3.

[22] The Court is aware of some potential drafting errors in the Complaint.  For example, although paragraph 6 suggests that it was Plaintiff's intention to sue Mr. Phillips for defamation and tortious interference, Mr. Phillips is not named in those counts while other Defendants are.  *Compare* Compl. (Doc. 2) ¶ 6, *with id.* at 4–5.  Plaintiff is not proceeding pro se.  He is represented by sophisticated legal counsel.  The language of his counts controls as to which Defendant or Defendants he is bringing each count against.

[23] *Id.* ¶ 15.

[24] *See Filla*, 336 F.3d at 810.

[25] *See supra* p. 3.

allege only that Mr. Phillips used to be a UPS employee and that he accused Plaintiff of using racial slurs and making threats against coworkers.[26]  Unlike the allegations against certain other defendants,[27] the Complaint does not suggest in any way that Mr. Phillips controls Plaintiff's hours, pay, or work.  Accordingly, it is absolutely clear (for the reasons explained in footnote 19 *supra*) that Mr. Phillips cannot be liable under the AMWA in this case.[28]  Therefore, the Court concludes that Mr. Phillips has been fraudulently joined to this lawsuit.  He is dismissed and not considered for purposes of the diversity jurisdiction analysis.

### 3.  Mr. Smith

Mr. Larry Bruce Smith is expressly named in Count I, which alleges a violation of the AMWA's compensation requirements.[29]  And he is implicitly named in Count II (the AMWA retaliation claim) because Count II is pled against all Defendants.[30]  As to Count I, Mr. Smith has been fraudulently joined because the relevant allegations are clearly and woefully insufficient to suggest an AMWA violation.

The relevant allegations are that Mr. Smith: (1) "failed to compensate Plaintiff for all hours worked, including off-the-clock tasks and additional shifts";[31] (2) "required [Plaintiff] to . . . [p]erform tasks off the clock, including moving trucks, making calls, . . . completing other duties[,] . . . [covering] shifts without being compensated[,] . . . [and working] additional hours,

---

[26] Compl. (Doc. 2) ¶ 6 ("Defendant, Jeremiah Phillips, is a black citizen of Arkansas and a former UPS employee; who is being sued for defamation and tortious interference with contractual relations."); *Id.* ¶ 15 ("Shortly after filing the grievance, Plaintiff was falsely accused of using racial slurs and making threats against coworkers by Phillips.").

[27] See *id.* ¶ 13 (alleging managerial control over Plaintiff by Mr. Smith and Mr. Isom).

[28] *See supra* note 19.

[29] *See* Compl. (Doc. 2) at 4.

[30] *See id.*

[31] *Id.* ¶ 24.

including being held after regular hours . . . without pay";[32] (3) "required [Plaintiff] to work off the clock without compensation and . . . denied [Plaintiff] pay for covering shifts and working additional hours";[33] and (4) "repeatedly failed to pay Plaintiff for work performed off the clock . . . ."[34]  Although at first blush these allegations might seem sufficient, there is something big missing.  There is no suggestion of any kind that Plaintiff was not paid overtime or that Plaintiff's hourly pay rate for any pay period ever fell below Arkansas's minimum wage rate.

The AMWA does not ensure that a person is paid his or her normal hourly wage for every hour worked.  (Maybe the AMWA should do so, but that is a policy question left to the judgment of the Arkansas General Assembly.)  Instead, the AMWA ensures that a person is (1) paid time-and-a-half for overtime, and (2) not paid below $11.00 per hour in any pay period.[35]  The Complaint does not tell the Court whether Plaintiff was making minimum wage, slightly above minimum wage, or significantly above minimum wage.  The Complaint does not allege that Plaintiff ever worked overtime (i.e., over 40 hours a week).[36]  The Complaint does not allege how many extra minutes Plaintiff worked on any occasion.  There is just no reason to assume that Plaintiff's pay rate for any pay period fell below $11.00 per hour.  Without the foregoing, it is absolutely clear that AMWA liability does not attach.[37]

---

[32] *Id.* ¶ 13.

[33] *Id.* ¶ 12.

[34] *Id.* ¶ 20.

[35] *See* Ark. Code § 11-4-211(a); Ark. Code § 11-4-210(a)(3).

[36] *See* Ark. Code § 11-4-211(a).

[37] Defendants did not raise this particular argument in opposing remand.  Because the Court is addressing an issue of subject matter jurisdiction, however, Defendants' failure to raise the issue is of no moment.  *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548 (2019) ("Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012))); *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024) (same).  As to the argument that Defendants did raise—regarding whether Mr. Smith is an employer for purposes of the AMWA—the Court disagrees with Defendants.  Paragraphs 13, 19, and 20 allege enough managerial control to give rise to a sufficient

That leaves Count II (AMWA Retaliation) to address with respect to Mr. Smith. Here's the sum and substance of what the Complaint alleges against Mr. Smith. First, Mr. Smith "had a documented history of retaliatory conduct . . . ."[38] Second, Mr. Smith "expressed animosity toward Plaintiff . . . ."[39] Third, Mr. Smith made "statements to other employees" and took "actions to prevent Plaintiff's promotion."[40] The Complaint does not disclose any specifics about Mr. Smith's alleged documented history of retaliatory conduct. The Complaint does not disclose what Mr. Smith said that allegedly counts as animosity. The Complaint does not disclose what statements Mr. Smith allegedly made (and to whom he made them) to prevent Plaintiff's promotion. The Complaint does not disclose what actions were allegedly taken by Mr. Smith to prevent Plaintiff's promotion. The Complaint does not allege when Plaintiff sought and was denied a promotion or even whether it was before or after Plaintiff filed the grievance at issue in the AMWA retaliation claim. In short, the AMWA retaliation allegations against Mr. Smith are entirely conclusory.[41] As currently pled, the Complaint does not provide a reasonable basis in fact and law for an AMWA retaliation claim against Mr. Smith.[42]

For the foregoing reasons, Mr. Smith has been fraudulently joined to this lawsuit. He is dismissed and not considered for purposes of the diversity jurisdiction analysis.

---

possibility (considering the loose standards of the reasonable basis in fact and law test) that the Arkansas courts would consider Mr. Smith an employer of Plaintiff for purposes of the AMWA. *See supra* note 19.

[38] Compl. (Doc. 2) ¶ 19.

[39] *Id.*

[40] *Id.*

[41] The Complaint alleges that Mr. Smith (and others) failed to pay Plaintiff for work performed off the clock. *See* Compl. (Doc. 2) ¶ 20. But there is no suggestion that this was retaliation for the grievance at issue. The Complaint also alleges that "Defendants retaliated against Plaintiff for filing a grievance by subjecting him to unwarranted scrutiny, fabricating accusations, and ultimately terminating him." *Id.* ¶ 27. But the Complaint does not say which Defendants took which of these actions.

[42] *See Filla*, 336 F.3d at 810.

### 4. Mr. Keith

Mr. Keith is expressly named as a Defendant in Count IV (Defamation) and Count V (Tortious Interference).[43]  And he is implicitly named in Count II (AMWA Retaliation) because Count II is pled against all Defendants.[44]  This time, it is easier to go in reverse order.  For the same reasons the Court explained for Mr. Beasley and Mr. Phillips, Mr. Keith is fraudulently joined with respect to Count II.[45]  Nowhere does the Complaint allege that Mr. Keith had or has the type of managerial authority over Plaintiff that would provide a reasonable basis in fact and law to conclude Mr. Keith was Plaintiff's employer for purposes of the AMWA.

Count IV is harder.  The Court does not agree with the Defendants' statute of limitations argument.[46]  It is true that, as currently pled, the only reasonable inference is that Mr. Keith's alleged defamatory statements were oral, not written.  And it is therefore true that a one-year statute of limitations applies.[47]  The problem for Defendants, however, is that the Court does not read the Complaint to definitively say that Mr. Keith made the allegedly defamatory statements while he was employed at UPS.  Maybe it was before Mr. Keith left UPS, maybe it was after.  Both are reasonable inferences.  What is clear is that Mr. Keith made the allegedly defamatory statements sometime before Plaintiff's termination.  But that could have been within the one-year lookback period from the filing of the Complaint.[48]

---

[43] *See* Compl. (Doc. 2) ¶¶ 33, 36.

[44] *See id.* ¶ 27.

[45] *See supra* pp. 3–6.

[46] *See* Defs.' Resp. in Opposition to Pl.'s Mot. to Remand (Doc. 15) at 8–9.

[47] *See* Ark. Code § 16-56-104(3).

[48] *Compare* Compl. (Doc. 2) (Complaint was filed on May 28, 2025), *with id.* ¶ 17 (Plaintiff was terminated on Sept. 27, 2024).

Plaintiff nonetheless has a problem.  The only relevant allegation against Mr. Keith is that he "made false and defamatory statements about Plaintiff to UPS management, accusing [Plaintiff] of misconduct and contributing to [Plaintiff's] termination."[49]  These are legal conclusion dressed up as facts.  Calling something defamatory doesn't make it so.  Calling something an accusation of misconduct doesn't make it so.  And saying something contributed to one's termination doesn't make it so.  The Complaint fails to disclose the substance of any allegedly defamatory statements made by Mr. Keith.  The Court doesn't even know the nature of the misconduct of which Mr. Keith allegedly accused Plaintiff.[50]  Additionally, the Court has no idea when these alleged statements were made, except that they were made sometime between when Plaintiff was hired and when Plaintiff was fired.  As currently pled, there is no reasonable basis in fact and law for a defamation claim against Mr. Keith.

Last but not least is Count V (Tortious Interference).  The Complaint alleges that Mr. Keith "knowingly" and "intentionally" "interfered with Plaintiff's contractual relationship with UPS" by "making" and "spreading" "false accusations" that "undermin[ed] his position" and "result[ed] in his termination."[51]  As Defendants point out, the Complaint does not allege that Mr. Keith knew the allegations he was making (and/or spreading) were false or even that he was reckless or negligent with respect to the statements' falsity.[52]  And the Complaint does not allege that Mr. Keith's statements were retaliatory in nature.  In short, there is no allegation that Mr. Keith

---

[49] *Id.* ¶ 21.

[50] In paragraph 33 of the Complaint, Plaintiff alleges that Mr. Keith accused Plaintiff of racism.  *See id.* ¶ 33.  But, given the rest of the Complaint, it is clear that Plaintiff meant to link the racism accusation with Mr. Phillips, not Mr. Keith.  *Compare id.* ¶ 15 (accusation of using racial slurs by Mr. Phillips), *with id.* ¶ 21 (accusation of misconduct by Mr. Keith).

[51] *See id.* ¶¶ 22, 36.

[52] *See* Defs.' Resp. in Opposition to Pl.'s Mot. to Remand (Doc. 15) at 5, 7–8.

engaged in what the Arkansas courts refer to as "improper conduct."[53]  And the Arkansas courts are clear that a plaintiff must plead and prove "improper conduct" in a successful tortious interference case.[54]  There is thus no reasonable basis in fact and law for tortious interference liability here.

For the foregoing reasons, Mr. Keith has been fraudulently joined to this lawsuit.  He is dismissed and not considered for purposes of the diversity jurisdiction analysis.

*        *        *

There is an important quirk the Court must address.  A large number of the above bases for finding fraudulent joinder come down to what is (or what is not) pled in the Complaint.  This raises a potential concern for the Court, given the binding caselaw that the Court must follow.  The Court is very aware that the no reasonable basis in fact and law test is supposed to be different from the 12(b)(6) test.[55]  In many cases, a plaintiff has a reasonable basis in fact and law for a particular claim even though he may subsequently fail to meet the 12(b)(6) standard for that particular claim. But in other cases, like the case at bar, the reasonable basis in fact and law question depends so much on the content of, or omissions in, the pleadings that it is hard to—in a practical way— disaggregate the 12(b)(6) standard from the reasonable basis in fact and law standard.  The Eighth Circuit has been clear that, in every case raising fraudulent joinder, the Court must do its best to

---

[53] *See K.C. Props. of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, at 26, 280 S.W.3d 1, 11 (2008) ("The elements of tortious interference that must be proved are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  Our law requires that the conduct of the defendants be at least 'improper,' and we look to factors in § 767 of the *Restatement (Second) of Torts* for guidance about what is improper." (internal citations omitted)).

[54] *See id.* at 26–27, 11–12.

[55] *See Filla*, 336 F.3d at 809–810.

employ only the lower-threshold reasonable basis in fact and law standard when deciding a remand motion.[56]

In our case, it is impossible to tell whether Plaintiff can, with added or altered pleadings, show that there really is a reasonable basis in fact and law for one or more of the claims discussed above.  It may be that Plaintiff has already pled absolutely everything he could in the best way he possibly could.  If so, it is just not enough to show even a remote possibility of relief against the Arkansas Defendants.  On the other hand, with respect to some claims, it may be that Plaintiff has simply made some good old-fashioned pleading errors that could be addressed with clearer or more thorough pleadings.  If so, Plaintiff may be able to show a possibly viable claim with more detailed fact allegations.

To ensure that the Court is hewing to the reasonable basis in fact and law standard, and to honor the longstanding principle that any doubts as to federal jurisdiction should be resolved in favor of remand,[57] the Court will give Plaintiff 21 days from the date of this Order to file an Amended Complaint.  If an Amended Complaint is filed, and if it shows that there is a reasonable basis in fact and law for one or more of the foregoing claims, the Court will revisit its remand decision.  Until (1) the Amended Complaint is filed and the Court decides whether the Amended Complaint justifies reconsideration of today's decision to not remand the case, or (2) the 21-day period just discussed expires without the filing of an Amended Complaint, the pending Motions to Dismiss remain stayed.  During this period, the Clerk is instructed to not remove from the docket

---

[56] *See id.* at 810 ("[I]f there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.").

[57] *See Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) ("[A] district court is required to resolve all doubts about federal jurisdiction in favor of remand."); *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) ("'All doubts about federal jurisdiction should be resolved in favor of remand to state court.'" (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010))).

any of the named Defendants.   The Court will further instruct the Clerk as to whether any Defendants should be removed from the docket at a later date.

IT IS SO ORDERED this 24th day of March 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE